1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                         CENTRAL DISTRICT OF CALIFORNIA

10

11  SARA JAUREGUI,                    )     NO. CV 04-279-MAN
                                      )
12              Plaintiff,            )
                                      )     MEMORANDUM OPINION
13       v.                           )
                                      )     AND ORDER
14  JO ANNE B. BARNHART,              )
    Commissioner of the              )
15  Social Security Administration,   )
                                      )
16              Defendant.            )
    _____)

17

18       Plaintiff filed a Complaint on January 23, 2004, pursuant to 42

19  U.S.C. § 405(g), seeking review of the denial by the Social Security

20  Commissioner ("Commissioner") of disability insurance benefits ("DIB").

21  On February 25, 2004, pursuant to 28 U.S.C. § 636(c), the parties filed

22  a "Consent to Proceed Before a United States Magistrate Judge."  The

23  parties filed a Joint Stipulation on September 15, 2004, in which:

24  Plaintiff seeks an order reversing the Commissioner's decision and

25  reinstating Plaintiff's terminated benefits; and Defendant requests that

26  the Commissioner's decision be affirmed. The Court has taken the

27  parties' Joint Stipulation under submission without oral argument.

28

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff filed an application for DIB on August 10, 1992, and claimed to have been disabled since February 11, 1992, based on pain in her right hand and shoulder, inability to use the right hand, neck and facial pain, pain in the upper back, pain in the right ear and eye, headaches, and nervousness.  (Administrative Record ("A.R.") 72-75, 233-34.)   After Administrative Law Judge ("ALJ") Earl J. Waits denied her application, the Appeals Council remanded the case for further evaluation of the evidence and for a supplemental hearing.  (A.R. 233-40, 267-70.)   On March 22, 1996, ALJ Jon L. Lawritson concluded that Plaintiff had been disabled since February 11, 1992, and was entitled to benefits.  (A.R. 325-27.)

In December 1997, the Commissioner conducted a continuing disability interview.  (A.R. 329-38.)  By decision of June 6, 1998, the Commissioner determined that Plaintiff was no longer disabled as of June 1, 1998, and Plaintiff's benefits would be terminated.  (A.R. 364-67.) Plaintiff sought reconsideration of that decision, and on May 17, 2000, Plaintiff, who was represented by counsel, appeared and testified at a hearing before ALJ Walter J. Fisher.  (A.R. 45-68.)  ALJ Fisher found that Plaintiff was no longer entitled to benefits, and the Appeals Council subsequently affirmed that decision.  (A.R. 4-6, 15-21.)

Plaintiff sought review of that decision in this Court (Case No. CV 02-3606-MAN).  On December 3, 2003, the parties stipulated to remand the case and to direct the ALJ to "further develop the record and determine whether Plaintiff's disability continues."  (A.R. 865.)  In addition,

2

the parties' stipulation provided that: "[t]he ALJ shall make a comparison between the severity of Plaintiff's current medical impairment with the condition that was present at the time of her most recent favorable decision in accordance with 20 C.F.R. § 404.1594." (A.R. 865-66.)

On April 1, 2003, an administrative hearing was held by ALJ Walter J. Fisher, and on July 22, 2003, a further hearing was held by ALJ John O. Kent.   (A.R. 800-05, 806-16.)   In a November 14, 2003 written decision, ALJ Kent affirmed the cessation of Plaintiff's benefits. (A.R. 792-98.)

## BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

### A.   Plaintiff's Medical Evidence

In support of her claimed impairments, Plaintiff submitted the records from her treating doctors, as well as several examining physicians.   After the ALJ's March 22, 1996 decision finding her disabled, Plaintiff submitted additional records regarding her battle with breast cancer and her treatment for arm problems, anxiety, and depression.

Plaintiff submitted records from Beverly Hospital from July 1996 through August 1998.   (A.R. 499-550, 696-725.)   Plaintiff underwent a left breast lumpectomy and lymph node dissection at Beverly Hospital in July 1996, and thereafter developed a postoperative infection.   (A.R. 525-26, 530-31.)   On October 31, 1996, Plaintiff underwent a total left

3

breast mastectcomy; she received chemotherapy after her surgery, which ended in March 1997. (A.R. 500-01, 557.) In addition, she was diagnosed with hypothyroidism in August 1996, and was admitted to the hospital for diabetes in March 1997. (A.R. 614, 622, 638.) In August 1997, she developed lymphangitis in her left arm and was hospitalized briefly.[1] (A.R. 557.) In the first half of 1998, Plaintiff underwent a series of operations for left breast reconstruction and reduction mammaplasty of her right breast. (A.R. 577-78.) In addition, in a report dated February 27, 1998, Dr. Ira Felman, one of Plaintiff's treating doctors, noted that Plaintiff complained of sleep disturbance and depression, and she was referred to Dr. Vijay Dhawan, another treating doctor, for follow-up related to her depression. (A.R. 595.)

In a March 2, 1998 report, Dr. Rocely Ella-Tamayo, an internal medicine physician who examined Plaintiff at the request of the Commissioner, diagnosed Plaintiff with diabetes mellitus, obesity, status post left mastectomy, and subcutaneous lumps on the scalp. (A.R. 585.) Dr. Ella-Tamayo stated that Plaintiff reported "residual right hand pain with numbness on past surgery to the right wrist in 1993 for benign tumor"; Dr. Ella-Tamayo found that there was "minimal neuropathy of the extremities on examination." (*Id.*) Dr. Ella-Tamayo opined that: Plaintiff's prognosis was "fair" with "satisfactory management of her diabetes mellitus"; she should lose weight; and she "should be able to participate in moderate physical activities." (*Id.*)

---

[1]    Lymphangitis is "infection and abscesses of lymph channels." MEDDESK § 18.25.

4

On May 14, 1998, Dr. Maria Teresa Salanga, a psychiatrist who examined Plaintiff at the request of the Commissioner, diagnosed Plaintiff with depressive disorder, not otherwise specified, and assessed her with a Global Assessment of Functioning score ("GAF") of 56.[2]  (A.R. 590.)  Dr. Salanga also found that Plaintiff: "has no difficulty interacting appropriately and communicating effectively with family members"; "seems to have difficulty maintaining focused attention"; and "can follow simple oral instructions." (*Id.*)

Plaintiff submitted records from her treating physicians at the Los Angeles County Harbor-UCLA Medical Center from June to December 1999. (A.R. 727-58.)  Progress notes dated June 14, 1999, noted Plaintiff's anxiety and nervousness, weakness in her arms and legs, left arm swelling and pain, and upper left chest pain.  (A.R. 744.)  These records show that, in September 1999, Plaintiff complained of left chest wall pain, and indicated that the pain radiated to her upper arm.  (A.R. 730, 736.)  These records also reflect diagnoses for diabetes mellitis, hypothyroidism, obesity, and abnormal liver function.  (*See* A.R. 736.)

Plaintiff submitted records from Dr. Savitri Goud, her treating doctor at Los Angeles County Hospital in Bellflower, as well as other doctors at that hospital, from October 1999 to 2003.  (A.R. 882-928.)  These records show treatment for Plaintiff's hypothyroidism, arm pain, and migraine headaches.  (*Id.*)   They also show that Plaintiff was

---

[2]   A GAF rating of 51-60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed. 1996).

diagnosed with anxiety and was treated with Zoloft. (A.R. 892-93, 895-96, 898, 911-13, 919.)

B. **The ALJ's Decision**

In his November 14, 2003 written decision, ALJ Kent found that Plaintiff had been found disabled beginning February 11, 1992, and has not engaged in substantial gainful activity since that date. (A.R. 797.) He found that Plaintiff's impairments present as of March 22, 1996 (the date of the most recent favorable medical decision finding that Plaintiff was disabled) were musculoskeletal impairments with severe and chronic right upper extremity pain. (*Id.*)

ALJ Kent further found that "there has been medical improvement in [Plaintiff's] [right upper extremity pain] since the date of the most recent decision finding her disabled, and that this medical improvement is related to her ability to work." (A.R. 795.) He also found that Plaintiff has current "severe" impairments, consisting of: diabetes mellitus; limitation of function of the left upper extremity status post mastectomy; hypothyroidism; obesity; and a depressive order, but that Plaintiff does not have an impairment or combination of impairments listed in, or medically equivalent to an impairment listed in, Appendix 1, Subpart P, Regulation No. 4. (A.R. 797.) Plaintiff's testimony regarding her impairments was found to be not credible by ALJ Kent, based on "her noncompliance with medical treatment, the absence of disuse muscle atrophy consistent with the degree of inactivity alleged by [Plaintiff] and lay witnesses, and other reasons set forth in the prior decision of June 23, 2000." (*Id.*)

1    In addition, ALJ Kent determined that Plaintiff had the following
2    residual functional capacity "since at least June 1, 1998":

3
4        [Plaintiff is] limited only by an inability to lift, carry,
5        push or pull more than 10 pounds frequently or more than 20
6        pounds occasionally; a restriction from more than occasional
7        climbing, balancing, stooping, crouching or crawling; a
8        requirement to avoid work at unprotected heights, around open
9        flames or dangerous machinery; a restriction from overhead
10       reaching with her left, nondominant upper extremity; a
11       moderately decreased ability to perform detailed or complex
12       tasks; and a moderately decreased ability to interrelate
13       appropriately with the general public (20 C.F.R. § 404.1545.)

14
15   (A.R. 797.)

16
17   ALJ Kent found that Plaintiff is a "younger individual" under 20
18   C.F.R. § 404.1563, is unable to communicate in English and has a
19   marginal education under 20 C.F.R. § 1564, and does not have any
20   transferable skills. (A.R. 798.) Although he found that Plaintiff
21   could not perform her past relevant work, ALJ Kent concluded that
22   Plaintiff could perform a significant number of jobs in the national
23   economy, such as the job of an assembler. (A.R. 797-98.) Accordingly,
24   Plaintiff's disability was determined to have ceased on June 1, 1998.
25   (A.R. 798.)
26   ///
27   ///
28   ///

7

**STANDARD OF REVIEW**

This Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence. <u>Smolen v. Chater</u>, 80 F.3d 1273, 1279 (9th Cir. 1996). The Commissioner's decision must stand if it is supported by substantial evidence and applies the appropriate legal standards. <u>Saelee v. Chater</u>, 94 F.3d 520, 521 (9th Cir. 1996). Substantial evidence is "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." <u>Moncada v. Chater</u>, 60 F.3d 521, 523 (9th Cir. 1995).

Although this Court cannot substitute its discretion for that of the Commissioner, this Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." <u>Desrosiers v. Secretary of Health and Human Serv.</u>, 846 F.2d 573, 576 (9th Cir. 1988); *see also* <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039-40 (9th Cir. 1995). This Court must uphold the Commissioner's decision if it is supported by substantial evidence and free from legal error, even when the record reasonably supports more than one rational interpretation of the evidence. *Id*. at 1041; *see also* <u>Morgan v. Commissioner of the Social Security Administration</u>, 169 F.3d 595, 599 (9th Cir. 1999); <u>Flaten v. Secretary</u>, 44 F.3d 1453, 1457 (9th Cir. 1995).

8

**DISCUSSION**

Plaintiff alleges three issues.  <u>First</u>, Plaintiff contends that the ALJ failed to determine properly that there has been "medical improvement" of her previously-established impairments.  <u>Second</u>, Plaintiff contends that the ALJ erred in his determination of her residual functional capacity and, in the process of doing so, improperly rejected her subjective symptom testimony.  <u>Third</u>, Plaintiff contends that the ALJ's finding that she could perform alternative work is not supported by the evidence.  (Joint Stip. at 10.)

**A.   The Commissioner Has Failed To Overcome The Presumption Of Continuing Disability.**

When a claimant has been granted DIB, her "continued entitlement to such benefits must be reviewed periodically."  20 C.F.R. § 404.1594(a); *see also* 20 C.F.R. § 404.1589 ("After we find that you are disabled, we must evaluate your impairment(s) from time to time to determine if you are still eligible for disability cash benefits.").  To accomplish this, the Commissioner engages in "continuing disability reviews," which vary in frequency.  *Id.; see also* 20 C.F.R. § 404.1590; <u>Flaten v. Secretary of Health & Human Services</u>, 44 F.3d 1453, 1460 (9th Cir. 1995).  During this process, the Commissioner must determine whether the claimant has sustained a "medical improvement" in the impairment underlying the earlier finding of disability[3] *and*, "if so," whether it is "related to

---

[3]      Medical improvement is defined as "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to

9

1    [the claimant's] ability to work."  20 C.F.R. § 404.1594(a).  If these

2    requisites are established, the Commissioner then must show that the

3    claimant is "currently able to engage in substantial gainful activity"

4    before benefits can be terminated.  *Id.  See also* 42 U.S.C. § 423(f)(1).

5

6         The Commissioner must conduct the continuing disability review

7    using the eight-step evaluation process set forth in 20 C.F.R. §

8    404.1594(f).  If no medical improvement with respect to the subject

9    impairment is found pursuant to this process, the claimant remains

10   entitled to receive benefits.  20 C.F.R. § 404.1594(a).  If, during this

11   evaluation process, the Commissioner determines that medical improvement

12   -- *i.e.*, a "decrease in severity" -- has occurred that is related to the

13   claimant's ability to do work -- *i.e.*, "there has been an increase in

14   the residual functional capacity based on the impairment(s) that was

15   present at the time of the most recent determination" -- then the

16   Commissioner "will determine whether all your current impairments in

17   combination are severe" -- *i.e.*, "will consider all your current

18   impairments and the impact of those impairments on your ability to

19   function."  20 C.F.R. § 404.1594(f)(3), (4) and (6) (the third, fourth,

20   and sixth steps of the evaluation process).  If, as a result of step

21   six, the Commissioner determines that a claimant's current impairments

22   are severe, the Commissioner will assess the claimant's "current ability

23   to do substantial gainful activity" -- *i.e.*, "assess your residual

24   functional capacity based on all your current impairments" -- and

25   ───────────────────

26   be disabled."  *See* 20 C.F.R. §§ 404.1594(b)(1) and (c)(1).

27        "A determination that there has been a decrease in medical
     severity must be based on changes (improvement) in the symptoms, signs
     and/or laboratory findings associated with [the claimant's]
28   impairment(s)."  *Id.*

10

determine whether you can do your past work or, if not, any other work. 20 C.F.R. § 404.1594(f)(7) and (8) (the seventh and eighth steps of the evaluation process).

Once a claimant is found disabled, a presumption of continuing disability arises. *See* <u>Bellamy v. Secretary of Health and Human Services</u>, 755 F.2d 1380, 1381 (9th Cir. 1985). This presumption imposes on the Commissioner the burden of producing evidence to meet or rebut this presumption. *Id.* Disability benefits cannot be terminated unless substantial evidence demonstrates medical improvement in the claimant's impairment so that the claimant is able to engage in substantial gainful activity. *See* 42 U.S.C. § 423(f); <u>Murray v. Heckler</u>, 722 F.2d 499, 500 (9th Cir. 1983).

The Court concludes that the Commissioner's "medical improvement" analysis and determination was erroneous in several respects.

1. **<u>The ALJ Improperly Re-Assessed The Findings Set Forth In The 1996 Decision Awarding Benefits</u>.**

In the decision of the Commissioner in issue (ALJ Kent's November 12, 2003 decision), the ALJ found against Plaintiff on the first two steps of the Section 404.1594(f) sequential evaluation process, a finding that, correctly, is not challenged. (A.R. 793.) The regulations then required ALJ Kent to determine whether: (1) Plaintiff's impairment found in ALJ Lawritson's March 22, 1996 decision (the "Disability Decision") had medically improved through a decrease in its severity (step three); and (2) if so, such improvement related to

11

her ability to work, because her residual functional capacity ("RFC") based on that impairment had increased from the RFC found in the Disability Decision (step four).   At this point in his analysis, however, ALJ Kent, however, deviated from the required sequential evaluation in favor of a re-assessment of the validity of the Disability Decision itself, stating:

> The only chronic musculoskeletal pain documented by the evidence of record as of March 22, 1996 was right hand and shoulder pain, which [Plaintiff] attributed to continuous work-related trauma during the course of her employment as a sewing machine and press operator.   The disability onset date established in the Administrative Law Judge decision of March 22, 1996 was February 11, 1992, the date [Plaintiff] last worked at that occupation and sought treatment for right hand and wrist pain (Exhibit 18/2).   *None of the medical opinion of record prior to March 1996 is consistent with a finding that [Plaintiff] was unable to perform less than a limited range of light work for any continuous period of 12 months or longer (Exhibits 16; 23/17; 25/7; 26/4; 40/2).*   The medical diagnoses and significance of clinical and laboratory findings contained in the evidence before the Administrative Law Judge in March 1996 were controversial and, until 1993, were contested in [Plaintiff's] worker's compensation claim.   *In any case, it is clear that the decision that [Plaintiff] was disabled was not based on the functional assessments of treating, examining or reviewing physicians, [Plaintiff's] medical diagnoses or the severity of the objective findings set forth in the evidence.*

1    *The only reason articulated by the Administrative Law Judge*
2    *for the decision was [Plaintiff's] pain complaints.*
3    *Therefore, the undersigned Administrative Law Judge finds that*
4    *the conclusion that [Plaintiff] was under a disability from*
5    *February 11, 1992 through at least March 22, 1996 was based on*
6    *excessive, but nonetheless credible[,] right upper extremity*
7    *pain that was considered to preclude sustained work activity*
8    *at any level of physical exertion.*

10   (A.R. 794; emphasis added.)

12   In short, ALJ Kent considered the Disability Decision to be
13   defective because, in his view, it did not rest on any objective medical
14   findings. Notwithstanding the fact that the 1996 disability
15   determination had stood as the decision of the Commissioner for seven
16   years, ALJ Kent elected to disregard its findings and, instead, to
17   superimpose his own retrospective disability determination. He
18   recharacterized the nature and scope of Plaintiff's previously-found
19   severe impairments and limited them to "right upper extremity pain." He
20   also determined that, as of March 22, 1996, Plaintiff should have been
21   found to have the RFC to undertake a limited range of light work (A.R.
22   794), rather than, as ALJ Lawritson found in his 1996 decision, an RFC
23   of "subsedentary and working without the interference of pain" (A.R.
24   326).

26   Under the continuing disability review regulations, the
27   Commissioner is to consider the evidence underlying a prior disability
28   decision in order to determine whether there has been the necessary

13

improvement in the symptoms, signs and/or laboratory findings associated with the impairment.  *See, e.g.,* 20 C.F.R. § 404.1594(b)(1) and (7). Thus, it was not improper for the ALJ to examine the medical evidence of record as of the time of the Disability Decision.  Here, however, ALJ Kent's above-noted analysis cannot fairly be characterized as simply an effort to meet his duty to compare conditions found to exist at the time of the disability determination with those presently existing.  Rather, ALJ Kent undertook to, and did, purport to redetermine and alter the findings made by ALJ Lawritson in 1996, *before* he commenced his medical improvement evaluation.  The Commissioner is not entitled to use the continuing disability review process as a means of undermining, and thereby avoiding, an earlier final disability determination in this manner.

As a threshold matter, ALJ Kent not only recharacterized the RFC finding actually made by ALJ Lawritson in the Disability Decision,[4] but also found that a different RFC finding should have been made.  He stated that the medical evidence of record as of March 22, 1996, showed that Plaintiff was able to perform at least a limited range of light work.  (A.R. 794.)  Defendant's weak attempt to brush-off this portion of the ALJ's decision as mere "dicta" (Joint Stip. at 23) is wholly unpersuasive.  The regulations explicitly state that, during the continuing disability review process, "[t]here will be no attempt made to reassess the prior residual functional capacity."  20 C.F.R. §

_____

[4]      ALJ Lawritson found Plaintiff to have the "exertional level of subsedentary and working without the interference of significant pain."  (A.R. 326.)  ALJ Kent asserted that the 1996 finding actually was a finding of a preclusion of "sustained work activity at any level of physical exertion."  (A.R. 794.)

404.1594(c)(3)(ii).  ALJ Kent's decision violates that regulation.

ALJ Kent's dismissive treatment of the medical evidence underlying the Disability Decision, and his related contention that the Disability Decision rested solely on Plaintiff's subjective pain complaints, is both inappropriate and factually unsupportable.  ALJ Lawritson stated that he reached his 1996 findings "[a]fter a thorough evaluation of the entire record." (A.R. 325.)  That record included substantial objective medical evidence supporting his conclusions.[5]  Moreover, this asserted justification by ALJ Kent for imposing his own disability and RFC findings in place of those made by ALJ Lawritson was improper given the defined scope of the task before him on remand, namely, to make a proper continuing disability assessment.

_____

[5]     The medical evidence of record at the time of that determination included, *inter alia*:  A.R. 135 -- February 13, 1992 treating physician report as to EMG, which demonstrated right hand carpal tunnel syndrome with evidence of radiculopathy, and observation of right hand ganglion cyst; A.R. 148-50 -- March 4, 1992 treating physician examination notes, reflecting Plaintiff's admission to the Whittier Hospital Medical Center for carpal tunnel decompression surgery of the right hand, as well as removal of the ganglion cyst; A.R. 160 -- April 7, 1992 abnormal EMG of the right hand showing evidence of changes at the right C6-7 level which was compatible with radiculopathy; A.R. 158-59 -- June 13, 1992 report of neurologist discussing results of somatosensory evoked potential test, finding abnormality on the right side with stimulation of the median nerve and indicating possible thoracic outlet syndrome or brachial plexiitis; A.R. 179 -- Dr. Carr's July 22, 1992 report, indicating that Plaintiff should be precluded from "prolonged, repetitive or stressful gripping, twisting, turning, pushing, pulling and reaching involving the right shoulder and upper extremity" and "above-the-shoulder activities on the right inasmuch as this further compresses the thoracic outlet and is exacerbating to her symptoms," and that he "would not recommend lifting more than 10 pounds with the right upper extremity; A.R. 169-72 -- March 23, 1993 examining orthopedist's report observing tenderness and limited range of motion in right shoulder area and diagnosing thoracic outlet syndrome, chronic right elbow lateral epicondylitis; clinical ulnar nerve peripheral neuropathy, right elbow, chronic right shoulder rotator cuff impingement syndrome, chronic right wrist flexor tenosynovitis and multiple hand joint contractures, and chronic musculoligamentous sprains of the cervical and lumbar spines.

In "limited" situations, the continuing disability review eight-step process does allow the Commissioner to consider whether the earlier disability determination in issue was erroneous.  However, such a consideration can be made *only*:  at step five of the process; after steps three and four have been completed; and there exists an attendant determination that the claimant has not sustained a medical improvement, but can perform substantial gainful activity.  At that point, the Commissioner may consider whether any of the "exceptions" found in 20 C.F.R. § 404.1594(d) apply.  *See* 20 C.F.R. §404.1594(f)(5) (step five). Under exception (d)(4), the Commissioner may find that disability has ended when "[s]ubstantial evidence shows on its face that the decision in question should not have been made." 20 C.F.R. § 404.1594(d)(4)(i). The express description of the exception, and the examples provided, indicate that the exception applies "only" when evidence has been "misread" or an adjudicative standard such as a listing or vocational rule from appendices 1 or 2 has been misapplied.  *Id.*

ALJ Kent's above-noted analysis, however, did not expressly invoke this exception, nor can it been deemed to be such an invocation.  The ALJ's quoted findings were made *before* he even attempted his step three analysis on the question of whether a medical improvement had occurred, and were utilized to alter the foundation for making that analysis.  Put otherwise, the ALJ's revisionist construction of the Disability Decision changed the playing field before he even commenced the pertinent step of the continuing disability review process.  This clearly was not an attempt to invoke the Section 404.1594(d)(4)(i) exception; indeed, the ALJ did not find any "misread" evidence or misapplied provisions of appendices 1 or 2.  Rather, he simply disagreed with the prior ALJ's

conclusions and analysis, and modified them to what he believed they should have been before beginning his own analysis. Moreover, this exception is to apply only in the "limited" situation that an impairment has not decreased in severity, but the claimant now can work and so is not disabled, or never should have been found disabled. 20 C.F.R. § 404.1594(d). The exception, thus, expressly is inapplicable in the situation found by the ALJ, namely, that there *was* a medical improvement.

The above-quoted findings of ALJ Kent were erroneous for the reasons set forth above. Accordingly, they do not serve as substantial evidence for the Commissioner's decision that Plaintiff's disability had ceased and she no longer was entitled to receive benefits.

2.   **The ALJ's Medical Improvement Findings Do Not Rest On Substantial Evidence**.

Following the above-discussed findings, ALJ Kent proceeded to steps three and four of the continuing disability review evaluation process, and found that Plaintiff had sustained a medical improvement (step three), which related to her ability to do work (step four). The ALJ stated:

In this case, medical improvement is shown as the evidence demonstrates a marked improvement in the right upper extremity symptoms that formed the primary basis for the finding that [Plaintiff] was disabled from February 11, 1992 through at least March 22, 1996.

17

In the two years prior to the favorable decision of March 1996, the record shows that [Plaintiff] was receiving ongoing treatment for right upper extremity pain (Exhibit 39). The current medical evidence of record shows that these complaints to treating physicians declined significantly after 1996. In June 1999, [Plaintiff] complained of "generalized aches and pain" (Exhibit B29/15; B29/18), but the record reflects only two complaints referable specifically to her right upper extremity between May 1996 and January 2003. On May 31, 1996, she gave a past medical history when she was hospitalized for a mastectomy for cancer in her left breast (Exhibit B19/24). In February 1998, while seeking reconstructive surgery for the left breast, she requested (and was subsequently given) a breast reduction on the right to alleviate numbness and discomfort in her right upper extremity (Exhibit B22/7). The treating source records show that [Plaintiff] had fairly persistent complaints of left upper extremity pain or discomfort after February 1998, but none referable to her right hand, right arm or right shoulder (Exhibits B22/4; B/26/4; B29/12; B44/21-22; B44/17.)

. . . .

The current medical evidence fails to establish the existence of any chronic, functionally-limiting pain syndrome affecting [Plaintiff's] ability to use her right hand, right arm or right shoulder after February 1998. Therefore, the Administrative Law Judge finds that there has been medical

18

1   improvement in the claimant's condition since the date of the
2   most recent decision finding her disabled, and that this
3   medical improvement is related to her ability to work.
4
5   (A.R. 794-95).
6
7   As the above portion of ALJ Kent's decision shows, he failed to
8   meet his duty to compare the evidence underlying the Disability Decision
9   *with* the current signs, symptoms, and laboratory findings regarding
10  Plaintiff's impairments, as required by Section 404.1594(b)(1).  The ALJ
11  failed to examine the earlier evidence[6] and, compounding this error, then
12  simply stated, conclusorily and without explanation, that unspecified
13  "current evidence" did not establish any right extremity impairment at
14  all.  (A.R. 795.)  This, in itself, is reversible error.
15
16  Further compounding his failure to comply with Section
17  404.1594(b)(1) and to proffer substantial evidence of an actual medical
18  improvement, the ALJ merely posited that there must be medical
19  improvement based on the non-existent of evidence, namely, his view that
20  Plaintiff had ceased complaining about her upper right extremity pain
21  and had failed to seek further treatment for this impairment.  (A.R.
22  794-95)  With respect to Plaintiff's asserted failure to seek treatment,
23  ALJ Kent stated:
24
25  Counsel has argued in this case that [Plaintiff's] failure to
26  seek treatment for allegedly ongoing right upper extremity
27  _____
28  [6]   As noted earlier, he simply brushed it off conclusorily and
without explanation or identification as "controversial."  (A.R. 794.)

1    symptoms should not detract from the credibility of her

2    allegation that her right upper extremity pain has been

3    ongoing because she testified that she had been told there was

4    nothing more that could be done for her.  However, the March

5    1998 consultant examiner found no muscle atrophy consistent

6    with the more than 8-year history of severe pain and

7    functional loss indicated by [Plaintiff] in her testimony of

8    May 17, 2000 (Exhibit B36/13-16).  Moreover, there is nothing

9    in the record to substantiate [Plaintiff's] allegation that

10    she was told that nothing else could be done for the

11    condition; the opposite is true (Exhibits 23/18-19; 41/5).

13 (A.R. 795.)

15    However, the evidence selectively cited by ALJ Kent (Exhibit 23/18-

16 19:  Dr. John Carr's July 24, 1992 report (A.R. 180-81), and Exhibit

17 41/5:  Dr. Carr's March 4, 1994 report (A.R. 317)) does not support his

18 conclusion that Plaintiff failed to seek treatment for her right

19 extremity impairments, particularly when viewed in light of record as a

20 whole.  The medical evidence of record shows that, in 1992 and 1993,

21 Plaintiff was treated by Dr. Carr and, pursuant to the worker's

22 compensation system, was examined by Dr. Charles Lane as the Agreed

23 Medical Examiner.  Dr. Carr concluded that thoracic outlet release

24 surgery was appropriate for treating Plaintiff's right extremity

25 impairment, although she was apprehensive about it.  Subsequently, Dr.

26 Lane disputed this diagnosis and limited the treatment available to

27 Plaintiff through her worker's compensation insurance coverage, which

28 precluded any surgery.  (*See, e.g.*, A.R. 163-64, 171, 184, 309, 317.)

20

As Dr. Carr observed in 1993 and 1994, because of Dr. Lane's report, "we are unable to provide the proper treatment for [Plaintiff] within the Worker's Compensation System," and thus, he was forced to discharge her from treatment and refer her to county health facilities.  (A.R. 163-64, 317.)

ALJ Kent's selective reliance on only a portion of the record to support his conclusion that Plaintiff "failed" to seek treatment was error.  *See* <u>Reddick v. Chater</u>, 157 F.3d 715, 723 (9th Cir. 1998)(it is impermissible for the ALJ to develop an evidentiary basis by "not fully accounting for the context of materials or all parts of the testimony and reports"); <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1456 (9th Cir. 1984)(an ALJ may not reach a conclusion and justify it by ignoring competent evidence in the record that would suggest an opposite result).  Further, the failure to obtain treatment, even if the alleged condition is remediable, is not a sufficient reason to deny benefits when the claimant suffers from financial hardships.  <u>Gamble v. Chater</u>, 68 F.3d 319, 320-22 (9th Cir. 1995)(quoting <u>Gordon v. Schweiker</u>, 725 F.2d 231, 237 (4th Cir. 1985)("It flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him")); Social Security Ruling 82-59 (a person who otherwise meets the disability criteria may not be denied benefits for failing to obtain treatment that he cannot afford). *See also* <u>Smolen</u>, 80 F.3d at 1284 (claimant's failure to obtain medication because she could not afford it provided a valid reason for her failure to do so).

Finally, and as ALJ Kent conceded, in February 1998, Plaintiff did

21

request a right breast reduction "to alleviate the pain and discomfort she feels to the right shoulder and numbness in the right extremity." (A.R. 580.)  She ultimately obtained the surgery she requested.  (A.R. 578.)  The ALJ provides no explanation for his inconsistent conclusion that Plaintiff failed to seek any treatment for her right extremity impairment.

With respect to ALJ Kent's conclusion that, following the Disability Decision, Plaintiff ceased complaining about her impairment, he asserts that, while Plaintiff testified that she was told that nothing more could be done for her, "the opposite is true" (relying on A.R. 180-81 and 317).  But, as discussed above, this mischaracterizes the record because, in fact, Plaintiff was unable to obtain the surgery recommended by Dr. Carr under her worker's compensation coverage, and as a result, he advised her that no further treatment was available through him and, therefore, scheduled no further appointments.  (*See* the portions of the record cited *supra* and A.R. 178 - Dr. Carr's July 24, 1992 opinion that Plaintiff has reached the "maximum improvement" possible absent surgery.)  Thus, ALJ Kent's finding in this respect was error.  *See* <u>Reddick</u>, 157 F.3d at 722-723 (misleading paraphrasing of the record constitutes error).

The step three conclusion that Plaintiff has sustained medical improvement was reached notwithstanding ALJ Kent's failure to conduct the required comparison of past and present symptoms, signs or laboratory findings.  He points to no identifiable medical improvement and relies only on his speculation that there must have been a medical improvement, because Plaintiff purportedly did not continue to complain

22

1   and seek treatment.  As shown above, that speculation was erroneous and

2   improper.  It is clear that the Commissioner's step three finding of a

3   medical improvement does not rest on substantial evidence.

4

5       The step four finding -- that Plaintiff's purported medical

6   improvement "is related to her ability to work" (A.R. 795) -- is equally

7   erroneous.  ALJ Kent simply stated this conclusion; he engaged in no

8   analysis of this question.  At step four, the Commissioner is required

9   to determine whether a found medical improvement relates to a claimant's

10  ability to do work by assessing whether the claimant's RFC has

11  increased.  20 C.F.R. § 404.1594(f)(4).  This is done by assessing a

12  claimant's current RFC.  "Unless an increase in the current [RFC] *is*

13  *based on changes in the signs, symptoms, or laboratory findings*, any

14  medical improvement that has occurred will not be considered to be

15  related to your ability to do work."  20 C.F.R. § 404.1594(c)(2);

16  *emphasis added*.

17

18      Here, as discussed above, ALJ Kent made no assessment of any

19  changes in the "signs, symptoms, or laboratory findings" based on a

20  comparison of the medical evidence of record as of 1996 and the present

21  with respect to the impairments established by the Disability Decision.

22  He did not discuss, much less show as required, any increase in

23  Plaintiff's RFC from that found by ALJ Lawritson in 1996, to the

24  present, as it relates to the impairments found in 1996.  The step four

25  finding is patently deficient and does not rest on any evidence, much

26  less substantial evidence.

27

28      For the reasons set forth above, the finding that there had been

23

medical improvement of Plaintiff's impairments related to her ability to do work does not rest on substantial evidence.   Accordingly, the Commissioner failed to meet her burden of producing evidence sufficient to overcome the presumption that Plaintiff's previously-found disability continued.   <u>Bellamy</u>, 755 F.2d at 1381.

### 3.   The "Exceptions" To A Continuing Disability Finding Are Not Applicable.

As noted earlier, there are "exceptions" that allow the Commissioner to find that a claimant's disability has ended, and to terminate benefits, in "limited" circumstances.   20 C.F.R. § 404.1594(d) and (e).   As previously mentioned, subsection (d) governs instances in which the Commissioner has not found any medical improvement but has found that, "taking all [of the claimant's] current impairment(s) into account," the claimant can engage in substantial gainful activity. Purely for the purposes of considering the applicability of these subsection (d) "exceptions," the Court below will assume, *arguendo*, that the ALJ properly found that Plaintiff can engage in substantial gainful activity,[7] after finding that she did not sustain any medical improvement related to her ability to do work.   The subsection (e) exceptions apply even when there is no determination that the claimant has medically

---

[7]     Plaintiff also asserts error in the ALJ's finding that she can engage in substantial gainful activity.   Certainly the substantial evidence of Plaintiff's additional severe impairments as found by both ALJ Fisher and ALJ Kent (*see* p. 28, *infra*), which compound her previously-determined impairment, suggest that Plaintiff's contentions may have merit.   However, the Court need not resolve whether such additional error occurred, because Plaintiff is entitled to a reversal and remand for the payment of benefits regardless of any additional error by the Commissioner in the last few steps of the eight-step evaluation process.

improved or can engage in substantial gainful activity.  The question

then is whether this case should be remanded to allow the Commissioner

to determine whether any of the Section 404.1594(d) or (e) exceptions

apply and warrant deeming Plaintiff to be not disabled.

The first subsection (d) exception applies when substantial

evidence shows that a claimant has benefitted from advances in medical

or vocational therapy or technology, which have favorably affected the

severity of her impairment or ability to do basic work activities.  The

second subsection (d) exception applies when substantial evidence shows

that the claimant has undergone vocational therapy, which has improved

her ability to meet the vocational requirements of more jobs.  20 C.F.R.

§ 404.1594(d)(1) and (2).  There is no basis in the record whatsoever

for finding that either exception is or could be implicated here, much

less that the Commissioner could establish either exception by

substantial evidence.  The same conclusion follows as to the third

subsection (d) exception, which applies when substantial evidence shows

that, based on new or improved diagnostic or evaluative techniques, the

claimant's condition is not as disabling as it was considered to be at

the time of the favorable decision.  20 C.F.R. § 404.1594(d)(3).  There

is nothing in the record which could warrant application of this

exception.

The Court previously has discussed the fourth (d) exception, *i.e.,*

substantial evidence demonstrates that the prior disability decision was

in error.  This exception can be invoked "only if":

(i) Substantial evidence shows on its face that the decision

in question should not have been made (e.g., the evidence in
your file such as pulmonary function study values was misread
or an adjudicative standard such as a listing in appendix 1 or
a medical vocational rule in appendix 2 of this subpart was
misapplied).

(ii) At the time of the prior evaluation, required and
material evidence of the severity of your impairment(s) was
missing.  That evidence becomes available upon review, and
substantial evidence demonstrates that had such evidence been
present at the time of the prior determination, disability
would not have been found.

20 C.F.R. § 404.1594(d)(4)(i)-(ii.)  The (ii) exception indisputably is
inapplicable here.  As to the (i) exception, as discussed earlier, ALJ
Kent unquestionably disagreed with the conclusions drawn by ALJ
Lawritson in the Disability Decision as to the nature and scope of
Plaintiff's found disability and her RFC.  (A.R. 793-94.)  However, his
disagreement was just that -- a different opinion as to the conclusions
to be drawn from the medical evidence of record.  ALJ Kent did not
identify any "error," within the meaning of subsection (d)(4)(i), that
was made by the ALJ Lawritson in the Disability Decision.[8]  Hence, there

_____

[8]    While the ALJ observed that a "mere finding" of an RFC of
"subsedentary" or "less than sedentary" does not meet the specificity
requirements of the regulations, he agreed that a finding that the
claimant's capacity for sustained work at "even" the sedentary level,
but which is substantially reduced by the factor of pain, warrants a
finding of disability under Section 201.00(h) of the Medical-Vocational
Guidelines.  (A.R. 793-94.)  This, of course, is essentially the finding
made by ALJ Lawritson in the Disability Decision, namely, that
Plaintiff's "impairments prevent her from performing a full range of
work beyond the exertional level of subsedentary and working without the

is no basis for finding that this exception is implicated here, much less that the Commissioner could establish the exception by substantial evidence.

With respect to the subsection (e) exceptions, the first three exceptions -- "[a] prior determination or decision was fraudulently obtained"; "[y]ou do not cooperate with us"; and "[w]e are unable to find you"; 20 C.F.R. § 404.1594(e)(1)-(3) -- are patently inapplicable in Plaintiff's case. The fourth (e) exception allows the Commissioner to find a claimant not disabled if she has failed to follow prescribed treatment that "would be expected to restore [her] ability to work," and lacks "good cause" for her failure to follow such prescribed treatment. 20 C.F.R. § 404.1594(e)(4). As discussed above, ALJ Kent asserted that Plaintiff failed to seek treatment for her impairment, and the Court rejected that conclusion. In any event, even if there were a question in this respect, the evidence of record establishes "good cause," in that: the "agreed" worker's compensation physician precluded treatment by surgery; and Plaintiff's treating physician discharged her from treatment, stating that she had obtained as much improvement was possible based on non-surgical treatment. (A.R. 163-64, 171, 178, 184, 304, 317.) There is no substantial evidence of record that would support application of this fourth (e) exception in this case.

For the reasons set forth above, there is no valid finding that Plaintiff has sustained a medical improvement related to her ability to do work, and there is no basis for applying any of the subsection (d)

---

interference of pain," and therefore, she is disabled pursuant to Section 201.00(h). (A.R. 326-27.)

and (e) exceptions to continuing disability.  Because the Commissioner has failed to establish, by substantial evidence, that the presumption of continuing disability has been overcome, the Commissioner was not entitled to terminate Plaintiff's DIB.  Accordingly, reversible error has occurred.

**B.    Remand For An Award of Benefits Is Appropriate.**

Plaintiff applied for benefits in 1992 and, after an initial unfavorable decision which the Appeals Counsel reversed, was found to be disabled in 1996.  Two years later, the Commissioner found that her disability had ceased.  Following a hearing requested by Plaintiff, the ALJ found, in June 2000, that her disability had ceased and she could perform the full range of light work, despite finding that Plaintiff currently had numerous additional severe impairments, including status post left breast mastectomy, diabetes mellitus, obesity, and a depressive disorder.  (A.R. 16, 20.)  In the prior action in this Court, the Commissioner stipulated with Plaintiff that a remand was needed, directing the Commissioner to make the required Section 404.1594 and step three comparison between the severity of her impairment found in 1996 with its current severity.  For the reasons set forth above, in the 2003 decision, the Commissioner *again* has failed to comply with this regulatory requirement and has failed to rebut the presumption that Plaintiff's disability continues.

The decision whether to remand for further proceedings is within the Court's discretion.  Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000); McAllister v. Sullivan, 888 F.2d 599, 603 (9th  Cir. 1989).

1  However, where a remand would simply delay the payment of benefits,
2  reversal and an award of benefits is appropriate.  *Id.*  As the Ninth
3  Circuit has repeatedly observed, when the record is fully developed and
4  a remand for further administrative proceedings would serve no purpose,
5  the Court should remand for an award and payment of benefits.  *See,*
6  *e.g.,* Benecke v. McCarthy, 379 F.3d 587, 593 (9th Cir. 2004); Lester v.
7  Chater, 81 F.3d 821, 834 (9th Cir. 1995); Smolen, 80 F.3d at 1292.  That
8  observation governs here.  The record here is fully developed,[9] there are
9  no outstanding factual issues, and, for the reasons set forth above, the
10  Commissioner has failed to meet its burden of rebutting the presumption
11  that Petitioner's previously-found disability continues.  The
12  Commissioner has had two opportunities to adjudicate the question of
13  whether Plaintiff's previously-found disability continues, but errors
14  have occurred both times, with consequent delay to Plaintiff.  There is
15  no legitimate reason for further delay or administrative proceedings on
16  this issue.  Accordingly, this case should be reversed and remanded for
17  the continuance of benefits.

18
19  **CONCLUSION**
20
21       Accordingly, for the reasons stated above, the cessation of
22  benefits is REVERSED, and this case is REMANDED for further proceedings
23  consistent with this Memorandum Opinion and Order.  Judgment shall be
24  entered reversing the decision of the Commissioner, and remanding the
25  matter for further administrative action, including the continuation of
26

27       [9]    In his 2003 decision, ALJ Kent stated that he obtained all
28  necessary additional evidence on remand, and considered it in reaching
    his decision.  (A.R. 795.)

Plaintiff's benefits, consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: April 6, 2006

/s/

MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE

30